■ ROBERT SWANSTON, Appellant, v GARY P. BLATTBERG et al., Respondents.—Appeal from a judgment of the Supreme Court, entered April 14, 1976 in Sullivan County, upon a verdict rendered at a Trial Term in favor of defendant of no cause for action. It is undisputed that on April 24, 1973 at about 2:15 A.M. the plaintiff, a pedestrian, was struck by a car being driven on a public highway by the defendant, Gary P. Blattberg, and owned by the defendant Edith M. Blattberg. The substantial issue for the jury was the credibility of the defendant driver and his passenger as opposed to the credibility of the plaintiff on the question of contributory negligence. In particular the question was whether the plaintiff was walking on the

shoulder of the highway or more in the middle of the highway on this night described by a police officer as "an extremely foggy, wet night". The plaintiff sustained a broken leg as a result of the accident. The question raised upon this appeal is whether or not the admission in evidence of a particular hospital record (defendant's exhibit "A"—Middletown State Hospital) requires a new trial. At the outset it must be observed that pursuant to CPLR 4518 (subd [a]), hospital records are generally admissible in evidence as to actions seeking a recovery for personal injuries, and subdivision (c) provides in part that such records "are admissible in evidence under this rule and are prima facie evidence of the facts contained". The record establishes that on April 5, 1976 the trial jury was drawn. The transcript of the trial proceedings shows that on April 6, 1976 the court noted that there had been a prior informal colloquy as to the admissibility of the record and a ruling and that counsel were putting their position on the record in chambers. Plaintiff's counsel noted that although the record contained entries as to the physical injuries, it also "goes into explicit detail as to the antisocial behavior of the plaintiff insofar as homosexuality is concerned, insofar as possible crimes that he has committed, insofar as his fanaticism in believing that he is Jesus Christ". Counsel went on to explain that the details objected to "was given in the course of treatment for the mental illness which is not a claim in this case". Counsel concluded: "I request that the Court only admit into the record those portions of the [exhibit] * * * having to do with the care and treatment of the physical injuries claimed herein." Defendant's counsel responded by asserting that there was no known statute or court decision "whereby only a portion of a hospital record is admissible". He went on to conclude: "If it is admissible, it is admissible in toto. This jury is entitled to a full and complete picture of this man to assess both his credibility and his claims of disability". The trial court found that it was: "impossible for the Court to sever in this record the treatment * * * that was given for the injuries that form the basis of this cause of action * * * from the case history of mental condition which antedates this accident and the mental condition of the patient or plaintiff that's been found to be subsequent to this condition." The trial court went on to find that if it was offered in evidence, there would be no deletion. On direct examination the plaintiff testified in part that in 1958 he was hospitalized in the "psychiatric section" of Bellevue Hospital for four months; and that out of the last 18 years he had been institutionalized about 10 years. The plaintiff further testified that on or about April 18, 1973 he obtained employment in Sullivan County at the Concord Hotel as a kitchen helper. The plaintiff remembered the accident as seeing a light and then that he· was in a wooded area, bleeding. According to the plaintiff he stayed in his initial hospital about one week and then was transferred by some "troopers" to Middletown State Hospital (hereinafter Middletown) where he was treated for his leg. On August 6, 1973 he finally left Middletown by simply leaving on his own. Thereafter he went to Bellevue Hospital and there the cast was finally removed in October, 1973 and he was discharged from care. Following the direct examination of the plaintiff, there was a colloquy between counsel as to the Middletown record and the court observed that it would be received "in toto for all treatment". The defendant thereafter offered the record in evidence and the court received it over the continuing objection of plaintiff. On cross-examination the plaintiff testified in part that during the year before trial he had not done much work because he had been in a mental hospital and prison; that he had been convicted of attempted rape; and that he had been previously convicted of petit larceny. The court immediately

instructed the jury that convictions had nothing to do with how the accident happened, but were admissible on credibility. Further on the cross-examination plaintiff testified that he had a couple of drinks of wine on the night of the accident. Upon cross-examination the defendant was not asked any questions as to his mental illness or mental capacity in and about the night of the accident. The plaintiff called a doctor as an expert witness. On cross-examination counsel asked the doctor if he had noted in the Middletown record that plaintiff had *jumped out a window two weeks after the accident*. The defendant's counsel in his summation referred to credibility and then referred to a "history of mental disorder"; the Middletown record; "the man's misfortune of being in mental hospitals just about throughout the vast majority of his adult life"; "you read about his hallucinations"; "I guess we all have a dark side"; "I say I guess most of the answer to this lawsuit is right in his own Middletown * * * record. And I guess it's fair to say that with that kind of background, I suppose telling a story under oath might not even seem to him to be wrong, you might not even think it's false"; "[defendants] can't hide behind a hospital record of schizophrenia and paranoia"; "even if Mr. Swanston [plaintiff] was lucid that night [accident]"; "I guess when you talk about who is credible and who is not credible, even if he [plaintiff] was lucid that night [accident]" and, "he [plaintiff] is a pathetic creature * * * [h]is mind is not stable". The plaintiff's counsel in summation noted that the plaintiff may have aggravated his injuries while in a mental institution. The trial court charged the jury that "here we have a plaintiff who is suffering from an admitted disability, not only admitted by both sides but admitted by medical proof". The court further charged: "[I]f you find evidence in those hospital records of quite an alarming medical condition and unusual medical condition, you're not to consider that. That's not part of this action at all". It does appear that the trial court felt it had previously charged the jury as to the use of the Middletown and all hospital records; however, the record does not disclose any such preliminary charge. The present record discloses that the plaintiff's Middletown record was not in its entirety material or relevant to the events related to the happening of the accident or in some way to "credibility". There can be no doubt that as to damages, his mental condition following the accident and/or his actions were relevant and material as to lost wages and any alleged pain and suffering. In the case of *Matter of Allstate Ins. Co. v Spadaccini* (52 AD2d 813) the court ruled that where statements in a hospital record are not germane to diagnosis or treatment or otherwise admissible as an admission against interest, such record is inadmissible. In the case of *Hayes v State of New York* (50 AD2d 693, affd on mem below 40 NY2d 1044) this court noted that even though a record may be admissible in evidence, it does not necessarily constitute proof of the facts therein. The court's final charge as to the Middletown record would leave the plaintiff with no basis for contending that there was prejudice in regard to the record, except for the summation of the defendants which dwelled on the alleged unsavory aspects of the plaintiff and his credibility. Of course, the plaintiff would not be expected to object to such a summation when the court has previously ruled that the record was in evidence *in toto* over objections seeking to limit the record. In a case such as the present one, the admission of the report in evidence should have been qualified by restricting its use for evidentiary purposes so as to exclude from the jury any view thereof of facts not constituting admissions on the part of the plaintiff and/or not being relevant and material to credibility. Upon the present record the exhibit should have been withheld from the jury and its original acceptance by the court in

evidence severely restricted. Judgment reversed, on the law and in the interests of justice, and a new trial ordered, with costs to abide the event. Mahoney, P. J., Main and Herlihy, JJ., concur; Kane and Larkin, JJ., dissent and vote to affirm in the following memorandum by Kane, J. Kane, J. (dissenting). Certain entries in the disputed hospital record were plainly admissible under CPLR 4518 and no objection was registered to defendants' summation or to the instructions given to the jury concerning that exhibit. While other portions of the document should have been excluded, the trial itself was brief and the extraneous matters reflected in the report had no direct bearing on the primary factual issue relating to plaintiff's location at the time he was struck. Accordingly, it cannot be said that the jury was diverted from its main task through the introduction of the entire exhibit and we conclude that, under the circumstances presented, its receipt into evidence did not constitute prejudicial error warranting a new trial. The judgment should be affirmed.